**GENERAL ELECTRIC COMPANY, Plaintiff,**

v.

**G. SIEMPELKAMP GmbH & CO., Defendant.**

No. C2–92–311.

United States District Court, S.D. Ohio, E.D.

Jan. 6, 1993.

Richard Dean Wetzel, Jr. and Charles Ernest Brown, Crabbe, Brown, Jones, Potts & Schmidt, Columbus, OH, for plaintiff.

John Cooper McDonald, Schottenstein, Zox & Dunn, Columbus, OH, for defendant.

## OPINION AND ORDER

GRAHAM, District Judge.

This is an action for alleged breach of contract, violations of the Uniform Commercial Code, products liability, and breach of express and implied warranties brought by plaintiff General Electric Company against G. Siempelkamp GmbH & Co., a German corporation. Plaintiff's claims arise out of the sale by defendant to plaintiff of two heavy duty presses designed for the manufacture of technical laminates. These presses were installed by defendant in plaintiff's Coshocton, Ohio facility.

On June 1, 1992, defendant moved to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(1), (2), (5) and (6). Defendant argued that service of process was improper because plaintiff induced defendant's representatives into the jurisdiction by trickery to serve them with process. Defendant also argued that a forum selection clause contained in the contracts between the parties required that plaintiff bring its action in the court presiding over defendant's place of business in Germany.

Plaintiff filed a response to defendant's motion on August 3, 1992. Plaintiff asserted that defendant had also been served with process in Germany. Defendant did not challenge the validity of this service in its reply memorandum. Therefore, the court concludes that defendant's service of process argument is now moot.

Plaintiff also contests the validity of the forum selection clause referred to in the other branch of defendant's motion to dismiss. There is conflicting authority as to how a motion to dismiss based upon a forum selection clause should be addressed procedurally. Some courts have addressed a party's invocation of a forum selection clause as a motion to dismiss for want of

subject matter jurisdiction under Fed. R.Civ.P. 12(b)(1). *See AVC Nederland B.V. v. Atrium Inv. Partnership*, 740 F.2d 148 (2d Cir.1984); *Eastern Europe, Inc. v. Transportmaschinen Export–Import, Inc.*, 658 F.Supp. 612 (S.D.N.Y.1987). The Eleventh Circuit has viewed a forum selection clause as a matter of venue to be addressed under Fed.R.Civ.P. 12(b)(3). *See Stewart Organization, Inc. v. Ricoh Corp.*, 810 F.2d 1066 (11th Cir.1987). Yet another viewpoint was expressed in *LFC Lessors, Inc. v. Pacific Sewer Maintenance Corp.*, 739 F.2d 4 (1st Cir.1984), where the court rejected the argument that a forum selection clause presented an issue of lack of venue or subject matter jurisdiction and found that the appropriate method of invoking such a clause was by way of a motion to dismiss under Fed.R.Civ.P. 12(b)(6). Forum selection clauses have also been viewed as depriving the court of personal jurisdiction. *See e.g., Andrews v. Heinold Commodities, Inc.*, 771 F.2d 184 (7th Cir.1985).

■■■ If the enforceability of the forum selection clause is considered an issue relating to subject matter jurisdiction under Rule 12(b)(1), then this court may consider evidentiary materials outside the pleadings and resolve factual disputes. *See Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990). However, if the enforceability of the clause is a matter to be considered under Rule 12(b)(6), then the court, upon the submission of evidentiary materials outside the pleadings, must employ the standards applicable to a summary judgment motion under Fed.R.Civ.P. 56. *Id.* This court, by order filed on October 5, 1992, notified the parties that summary judgment standards would be applied in ruling on defendant's motion, and afforded the parties the opportunity to present additional evidence. No additional evidence was submitted, and the parties declined the opportunity to present oral argument. Thus, the court will review the current record and apply summary judgment standards to any factual matters regarding the contractual validity of the forum selection clause.

■■■ The procedure for granting summary judgment is found in Fed.R.Civ.P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

■■ As noted by the Sixth Circuit in *Interamerican Trade Corp. v. Companhia Fabricadora de Pecas*, 973 F.2d 487 (6th Cir.1992), the authorities are also in conflict as to whether federal or state law applies to the enforceability of forum selection clauses where a federal court is sitting in diversity jurisdiction. In that case, the Sixth Circuit noted that Ohio courts treat forum selection clauses in a similar manner as the federal courts, and applied federal law to the case before it. *Id.* at 489. The enforceability of choice of forum clauses was recognized in *United Standard Management Corp. v. Mahoning Valley Solar Resources, Inc.*, 16 Ohio App.3d 476, 16 OBR 559, 476 N.E.2d 724 (1984). Subsequently, in *Barrett v. Picker International, Inc.*, 68 Ohio App.3d 820, 589 N.E.2d 1372 (1990), an Ohio court of appeals con-

sidered the same factors utilized under federal law in determining the validity of a choice of forum clause. Thus, it appears that Ohio law mirrors federal law in this area, and that either may be applied with the same effect.

The evidence contained in the record in the present case reveals that plaintiff submitted a purchase order for the first of two presses and finishing lines on August 26, 1987. Instead of signing the acceptance copy of the purchase order, defendant sent plaintiff an order confirmation dated August 31, 1987. This order confirmation was signed on behalf of plaintiff by A.J. Carbone, an employee of the plaintiff, at defendant's place of business in Krefeld, Germany on September 2, 1987. Mr. Carbone signed the document on page 3 and initialed each page. Paragraph I(3) of Annex No. 3 to the confirmation order contains the following language:

> Terms of formal contract or of supplier's written order confirmation shall prevail. No prior agreements or representation relative to any other terms and conditions of the parties shall be binding. Any additions and modifications to the contract require supplier's written confirmation.

Paragraph X of Annex No. 3 provides:

> Place of jurisdiction for all disputes arising in connection with the contract shall be at the principal place of business of the supplier. This shall also apply for claims in summary procedures on bills of exchange, promissory notes or cheques. The supplier is also entitled to file a suit at the principal place of business of the purchaser.

Paragraph X further provides that the laws of the Federal Republic of Germany shall govern any dispute arising under the agreement.

Plaintiff sent a second purchase order for the first press to defendant on October 7, 1987. Defendant, by letter dated November 16, 1987, noted the new purchase order, but indicated that as far as defendant was concerned, the only contractual basis for the performance of the contract was defendant's confirmation order dated August 31, 1987. There is no evidence that plaintiff made any reply to this letter.

Plaintiff purchased a second press and finishing line from defendant in 1988. Defendant's confirmation order of May 24, 1988 was signed on behalf of plaintiff by A.J. Carbone on May 26, 1988 at Krefeld, Germany. The second confirmation order, found in Annex No. 4, contained the same forum selection clause as that found in the first confirmation order.

■ Plaintiff first argues that the forum selection clause found in the order confirmations were not a part of a contract between the parties. Plaintiff alleges that A.J. Carbone did not have authority to accept the terms of the order confirmations on behalf of plaintiff. The plaintiff has produced documents indicating that Mr. Carbone did not have the authority to approve a purchase of the dollar amount involved here. However, even assuming that plaintiff's evidence creates a genuine issue of material fact in regard to Mr. Carbone's actual authority, the Ohio law cited by plaintiff indicates that agency may also be implied or apparent. In the absence of actual authority, a party will be bound by a contract if that party, by his words or conduct, has reasonably caused the other party to the contract to believe that the person assuming to act as an agent had the necessary authority to make the contract. *Cascioli v. Central Mut. Ins. Co.*, 4 Ohio St.3d 179, 4 OBR 457, 448 N.E.2d 126 (1983); *Miller v. Wick Bldg. Co.*, 154 Ohio St. 93, 42 O.O. 169, 93 N.E.2d 467 (1950). Apparent agency requires a showing that the principal held the agent out to the public as possessing sufficient authority to perform the particular act in question, or knowingly permitted him to act as having such authority, and that the person dealing with the agent knew of the facts and, acting in good faith, had reason to believe and did believe that the agent possessed the necessary authority. *Master Consolidated Corp. v. BancOhio National Bank*, 61 Ohio St.3d 570, 575 N.E.2d 817 (1991).

■ Plaintiff points to paragraphs 23 of the purchase order, which provides:

This agreement can be modified or rescinded only by a writing signed by the parties or their duly-authorized agents. The duly-authorized agents of Purchaser are the Purchaser's Manager–Manufacturing or Manager Purchasing.

However, there is no language in this paragraph which would place defendant on notice that Mr. Carbone lacked the authority to accept the order confirmation. The language refers to modification or rescission of the purchase order, and the purchase order was never accepted by defendant as the agreement of the parties. During the relevant time period, Mr. Carbone held the titles of Manager of Manufacturing Engineering and Facilities and Manager, Manufacturing Engineering Programs. There is no evidence as to why defendant could not reasonably have concluded that Mr. Carbone's titles fell within the "Manager–Manufacturing" language of paragraph 23.

Plaintiff also asserts that the Carbone letter of February 17, 1988 should have alerted defendant to Mr. Carbone's lack of authority. The court sees no language in that letter which can be construed as suggesting a lack of authority on Mr. Carbone's part. Plaintiff further argues that the reissuance of the purchase order following the September 2, 1987 signing of the confirmation order by Carbone should have indicated that Mr. Carbone did not have authority to approve the purchase. Whatever plaintiff meant to suggest by the reissuance of the purchase order under a new number, that act does not convey the message that Mr. Carbone lacked authority to accept defendant's confirmation order. There is no language in the second purchase order to the effect that plaintiff did not consider the order confirmation to be the contract of the parties. Defendant's letter of November 16, 1987, clearly stated that, despite the second purchase order, defendant considered the August 31, 1987 confirmation order to be the only contractual basis for the performance of the contract. No evidence has been presented that plaintiff objected or responded in any way to this letter.

Defendant has submitted the affidavit of Dieter Lommel, defendant's general manager of sales and marketing. Mr. Lommel states in his affidavit that Mr. Carbone was the primary individual involved in the purchase negotiations on behalf of plaintiff. Mr. Lommel further states that he believed in good faith that Mr. Carbone had authority to sign contracts on behalf of plaintiff, and that Mr. Carbone in fact signed over twenty contracts on behalf of plaintiff between April of 1987 and May of 1990. Mr. Lommel further states in his affidavit that Jeffrey O. Jacobson, General Manager of General Electric Electromaterials, was present on September 2, 1987 when Mr. Carbone signed the order confirmation dated August 31, 1987, and that, when asked who should sign the order, Mr. Jacobson responded that Mr. Carbone should sign. Mr. Lommel indicates that no representative of plaintiff ever expressly notified defendant of any lack of authority on Mr. Carbone's part to sign contracts on behalf of plaintiff.

Defendant asserts that plaintiff must have regarded the first order confirmation rather than its own purchase order as the agreement of the parties because Mr. Jacobson and Mr. Carbone also negotiated and signed a separate patent indemnification agreement which would not have been necessary if plaintiff's purchase order were regarded as the contract, since the purchase order addressed the matter of patent indemnification, whereas defendant's order confirmation did not. Defendant further notes that plaintiff has invoked the late delivery clause which is found in the order confirmations, but was not in plaintiff's purchase orders.

■ The evidence in the record indicates that Mr. Carbone had apparent authority to approve the contracts in question, and that no genuine issue of material fact has been shown to exist in regard to Mr. Carbone's apparent agency. Based upon the evidence presented, a reasonable trier of fact could not conclude that the order confirmations, and in particular the forum selection clauses, are invalid due to a lack of apparent or implied authority on the part of Mr. Carbone.

Plaintiff also argues that the present case represents a situation involving a battle of the forms to which Uniform Commercial Code § 2–207, codified in § 1302.10(A), Ohio Revised Code, applies. However, this argument is based upon the assumption that Mr. Carbone lacked authority to accept the order confirmations. No genuine issue of material fact has been shown in regard to his apparent authority to accept the order confirmations. Since the additional terms included in the order confirmations, including the forum selection clauses, were accepted on behalf of plaintiff by Mr. Carbone, § 2–207 is not applicable.

 Plaintiff next asserts that the forum selection clauses "are not as broad as" plaintiff's cause of action. Plaintiff argues that if it proves fraud in the inducement as alleged in Count VI of the complaint, the order confirmation would be invalid. If plaintiff means to argue that the forum selection clause applies only to the breach of contract claim and not to the breach of warranty and other claims asserted in the complaint, then plaintiff's argument is not well taken. The forum clause specifies Germany as the jurisdiction for all disputes "arising in connection with the contract." This language is broad enough to encompass all of the claims included in plaintiff's complaint. *See Interamerican Trade Corp.*, 973 F.2d at 490. Plaintiff likewise cannot rely on the general claim of fraud in the inducement included in Count VI as a basis for invalidating the forum selection clause. As the Sixth Circuit noted in *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1138 (6th Cir.1991), general claims of fraud, misrepresentation and deceit do not relate to a forum selection clause. Unless it is specifically pled and shown that the alleged fraud induced the party opposing a forum selection clause to agree to the inclusion of that clause in the contract, a general claim of fraud or misrepresentation as to the entire contract does not affect the validity of the forum selection clause. *Id.* Plaintiff's general claim of fraud does not nullify the forum selection clause.

 Plaintiff next argues that the forum selection clause is unreasonable and should not be enforced. Although forum selection clauses were once disfavored by the courts, this trend was changed with the Supreme Court's decision in *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). Now such clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Id.* at 10, 92 S.Ct. at 1913. The Supreme Court recently upheld a forum selection clause included in a contract for the purchase of a cruise line passage ticket in *Carnival Cruise Lines, Inc. v. Shute*, ── U.S. ──, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). Plaintiff argues that since *The Bremen* arose in the admiralty law context, enforcement of such clauses should be limited to admiralty cases. However, both federal and Ohio courts have enforced such clauses in other commercial contexts. *See e.g., Interamerican Trade Corp.*, 973 F.2d at 488 (agreement for sale of auto parts); *Moses*, 929 F.2d at 1133 (franchise agreement to print and sell business cards); *Barrett*, 589 N.E.2d at 1373 (action to recover retirement benefits).

 Forum clauses must be specifically enforced unless the opposing party can "clearly show that enforcement would be unreasonable or unjust, or that the clause [is] invalid for such reason as fraud or overreaching." *The Bremen*, 407 U.S. at 15, 92 S.Ct. at 1916. Forum selection clauses may also be unenforceable if enforcement would contravene a strong public policy of the forum where suit is brought, or where trial in the contractual forum would be so difficult or inconvenient that plaintiff, for all practical purposes, would be deprived of its day in court. *Id.* at 15, 18, 92 S.Ct. at 1916, 1917. Plaintiff bears a "heavy burden of proof" to establish a sufficiently serious inconvenience of the contractual forum. *Carnival Cruise Lines*, ── U.S. at ──, 111 S.Ct. at 1528.

 As noted previously, plaintiff has not shown or pled that the forum selection clause was the result of fraud or overreaching. Plaintiff has also not shown that enforcement of the clause would contra-

vene a public policy of the State of Ohio. The courts of Ohio have recognized the enforceability of forum selection clauses. Although the presses were installed at plaintiff's place of business in Ohio, the documents before the court reveal that a substantial part of the contract, including the manufacture of the machinery sold to plaintiff, was performed in Germany. The contract was signed in Germany and negotiations were conducted there. Plaintiff approached defendant in Germany concerning the purchase of this equipment. The circumstances do not indicate that Ohio's interest was so substantial as to defeat a valid contractual clause. *See Barrett*, 589 N.E.2d at 1374.

■ Plaintiff argues that enforcement of the clause would be unreasonable under the circumstances of this case. Factors to consider in weighing the reasonableness of a forum selection clause include: 1) which law controls the contractual dispute; 2) residency of the parties; 3) where the contract will be performed; 4) where witnesses and parties are located; and 5) whether the forum's designated location is inconvenient to the parties. *Barrett*, 589 N.E.2d at 1374–1375, *citing Clinton v. Janger*, 583 F.Supp. 284, 289 (N.D.Ill.1984).

■ Here, under the terms of the order confirmation, German law controls. Defendant's place of business is in Germany, and plaintiff's principal place of business is in the United States. Witnesses are located in the United States and in Germany. Thus, whichever forum is chosen, one of the parties will be inconvenienced, to some degree. The contract was performed both in Germany and the United States. However, defendant indicates that the machinery which forms the subject of the contractual dispute was manufactured in Germany, and that some of this work was performed by third-party subcontractors who are amenable to suit only in Germany. Defendant notes that enforcement of the forum selection clause would ensure that all litigation involving the contract can be joined in a single proceeding in Germany. Plaintiff is a major corporation which does business on a global scale and has pro-duced no evidence as to why litigation in Germany would present a serious inconvenience. The above facts weigh in favor of defendant's interest in a German forum.

Plaintiff advances additional reasons as to why enforcement of the clause would be unfair. Plaintiff contends that there is another forum selection clause at Annex 4 of the confirmation order, § 13.2, which does not preclude plaintiff from bringing suit in the United States. That annex relates to the installation of the presses in this country. The clause in question provides:

> In the event of any dispute arising in connection with this agreement, the case shall be entered with the competent court at the place of contractor's registered office. Contractor shall also be authorized to bring action at Customer's headquarters.

There is no ambiguity or inconsistency between this clause and the clause contained in Annex 3. Defendant indicates that it has no registered office in the United States. The forum selection clauses in both instances require plaintiff to file its action in Germany. The mere fact that the clauses give defendant the option of filing an action either in Germany or in the United States where plaintiff's headquarters and principal place of business are located, whereas plaintiff is limited to filing an action in Germany, does not render the clauses fundamentally unfair.

Plaintiff asserts that there was no "meeting of the minds" as to the forum selection clauses. However, plaintiff has produced no evidence to support its position that the clause was not fairly bargained for. Mr. Carbone initialed the page containing the clause in the first order confirmation when he accepted the order confirmation on plaintiff's behalf, and therefore may be deemed to have had notice of the clause. Plaintiff is a large corporation, not an unsophisticated party, and there is no evidence that plaintiff was compelled to enter into this agreement or that the forum selection clause was non-negotiable. Even non-negotiability would not *per se* bar enforcement of the clause. *See Interamerican Trade Corp.*, 973 F.2d at 489. The

evidence does not demonstrate the existence of a genuine issue of material fact in regard to whether plaintiff knowingly and voluntarily agreed to the forum selection clause when it accepted the order confirmations.

Plaintiff asserts that enforcement of the clause would be unfair because German courts would not enforce the clause. Plaintiff relies on the declaration of Dr. Fredrich Landwehrmann, in which Dr. Landwehrmann concluded that the clause would not be enforced by German courts. However, he did so based upon his conclusion that the forum selection clause was not included in any contract between the parties. Defendant has submitted the declaration of Klaus Steffen, an attorney in Krefeld, Germany. Mr. Steffen states that if the forum selection clause is deemed to be a part of the contract between the parties, it will be enforceable under German law. Under Fed.R.Civ.P. 44.1, the determination of an issue of foreign law is regarded as a question of law for the court to decide. The court concludes that forum selection clauses are enforceable under German law and that plaintiff has not shown that a German court would not honor the clause in this case.

Finally, plaintiff contends that enforcement of the forum selection clause would deprive plaintiff of its day in court because the statute of limitations under German law has run against plaintiff's claims. Plaintiff relies on the opinion expressed by Dr. Landwehrmann on this issue. Defendant has submitted the declaration of Mr. Steffen, in which he states that German "prescription" amounts to the right to refuse performance. According to Mr. Steffen, prescription does not bar the filing of an action, but rather is a matter which may be pleaded by the defendant. The court would then determine, based upon the circumstances, whether prescription should be applied and whether the prescription period should be tolled or extended based upon paragraph VI of Annex No. 3 to the order confirmation or some other ground. Defendant further notes that under the terms of the order confirmation, German law applies to disputes arising from the contract, and that this court would be obliged to apply the German law of prescription to plaintiff's action here even if the forum selection clause is not enforced.

This court is not persuaded that the German law of prescription would deprive plaintiff of its day in court in Germany. However, even assuming that prescription would operate in the same manner as a limitations bar, this would not in itself constitute a basis for refusing to enforce the forum selection clause. The unreasonableness exception to the enforcement of a forum selection clause refers to the inconvenience of the chosen forum as a place for trial, not to the effect of applying the law of the chosen forum. *Boatmen's First National Bank of Kansas City v. American Ins. Co.*, 1990 WL 482121, 1990 U.S.Dist. LEXIS 8165 (W.D.Mo.1990). Further, if a statute of limitations bar in itself would preclude enforcement of a forum selection clause, then in many cases the party who did not favor the clause could frustrate its application by the simple expedient of waiting until after the expiration of the limitations period in the designated forum to file an action in a more convenient forum where the limitations period is longer. This court does not believe that a party should be so easily relieved of its contractual commitment. The applicability of German law was provided for in express terms in the order confirmations, and was a matter which was known to plaintiff when it agreed to the forum selection clause. As the Sixth Circuit observed in *Interamerican Trade Corp.*, 973 F.2d at 489–490, where matters impacting upon the convenience of a particular forum were known to or foreseeable by plaintiff at the time the contract was negotiated and accepted, and where plaintiff can point to no change in circumstances which would justify relief from its contractual commitment, such matters do not justify a refusal to enforce the clause.

The court concludes that plaintiff has not met its heavy burden of showing that enforcement of the forum selection clauses would be unjust and unreasonable. The court further finds that the forum selection

clause is enforceable, and that no genuine issue of material fact has been shown in regard to plaintiff's agreement to the forum selection clause. Defendant's motion to dismiss is granted on the basis of the forum selection clause, and this action is dismissed without prejudice to plaintiff refiling the action in the appropriate court in Germany.